# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DEBRA GASSMAN, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 05 C 5377 |
| ) | |
| EDWARD FRISCHHOLZ, and SHORELINE ) | Judge Virginia M. Kendall |
| TOWERS CONDOMINIUM ASSOCIATION, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Debra Gassman ("Plaintiff" or "Gassman") brought this suit against her condominium association, Shoreline Towers ("the Association"), and the President of its Board, Edward Frischholz (collectively, "Defendants"). Plaintiff alleged that Defendants discriminated against her by enforcing a by-law that prevented her from placing a Mezuzah (a religious parchment encased in a small tube) on the outside of her doorway. Plaintiff also alleged that Defendants fined her for alleged rules violations in retaliation for complaining of this discrimination. Plaintiff's claims of religious discrimination were dismissed on summary judgment. Plaintiff claims that Defendants breached their fiduciary duty in enforcing the by-law and retaliated against her for complaining of the discrimination went to trial. On November 2, 2006, the jury returned a verdict in favor of Defendants on both claims.

Plaintiff now moves this Court pursuant to Federal Rule of Civil Procedure 59 to grant her a new trial. This Court will grant a new trial if the jury's verdict was "against the clear weight of the evidence or the trial was unfair to the moving party." *David v. Caterpillar, Inc.*, 324 F.3d 851, 863 (7th Cir. 2003); *see Lemons v. Skidmore*, 985 F.2d 354, 357 (7th Cir. 1993) ("[C]ivil litigants are

entitled to a fair trial, not a perfect one"). Plaintiff contends that defense counsel's statements during closing arguments and cross-examination rendered the trial unfair. The challenged statements dealt with: (i) who would ultimately pay for any judgment awarded against Defendants; and (ii) Plaintiff's decision to be represented by counsel at her rules violation hearing. This Court, having heard the remarks and considered them in the context of the trial as a whole and the Court's instructions to the jury, finds that defense counsel's statements did not deny Plaintiff a fair trial.

## I. Statements Regarding Defendants' Potential Liability for a Judgment

Defendants filed a Motion in Limine to exclude any evidence that they had insurance covering Plaintiff's claims against them. Defendants argued that they would be unfairly prejudiced if the jury knew that a third-party insurance company, and not Defendants, would be responsible for some or all of a money judgment. Generally, evidence that a person was or was not insured against liability is not admissible. *See* Fed. R. Evid. 411. Accordingly, the Court granted Defendants' motion.

During his closing argument, Plaintiff's counsel, Steven Blonder ("Blonder"), characterized the condominium association as large and not "some little mom-and-pop operation." In turn, Defendants' counsel, David Hartwell ("Hartwell"), argued in closing:

> Is this enough? It is enough. Enough is enough. Mr. Blonder gets up here and arrogantly says, I need you to award damages, as if he's even proved his case. And then he says that their behavior is so outlandish you've got to award punitive damages. But this is what I like the best. He says, You know what? This just isn't some little association. This is a big association. They've got a lot of money. Just tag them. Well, let's think about that. Who pays for the association? Every one of its members.
>
> Now, you saw Ms. Bloch, she's a unit owner. Ms. Treptow, she's a unit owner. Dr. Frischholz, he's a unit owner. Ms. Weinstein, she's not; she's just a renter. These are the people involved here. And now

2

> all of a sudden he wants you to get the entire association, all of its
> members involved and punish all of them.

Before making his rebuttal closing argument, Blonder asked the Court if he could mention that the Association carried insurance because of Hartwell's statements regarding the potential liability of individual unit owners. The Court first noted that Plaintiff's counsel had not objected to the statements. The Court nevertheless admonished Hartwell that he had stepped over the line by improperly arguing that the individual members of the Association were going to be responsible for paying the judgment when he knew that the Association was insured and he had moved to exclude any mention of that insurance. Hartwell explained that he made the reference only with regard to punitive damages, an area not covered by the insurance policy. Blonder then asked for a mistrial. This Court denied the motion for mistrial and Blonder's request to mention the insurance coverage. Instead, before Plaintiff's counsel gave his rebuttal, the Court instructed the jury that:

> Mr. Hartwell inaccurately argued to you that the individual unit owners of the Shoreline Towers Condominium Association could be responsible for any monetary judgment in this case. This is an improper consideration for you when determining the damages that you may or may not award in this case. During your deliberations, the question of the source of any funds should not enter into your decision. You should follow my instructions regarding damages and Mr. Hartwell's incorrect statement should not be considered by you in reaching your decision.

Plaintiff argues that the Court's instruction was inadequate and that fairness dictates that she be granted a new trial. A movant must leap a high hurdle to obtain a new trial based upon comments made during closing arguments. *See Doe By and Through G.S. v. Johnson*, 52 F.3d 1448, 1465 (7th Cir. 1995) ("The plaintiff has a heavy burden when she seeks a new trial based on improper remarks during a closing argument"); *Valbert v. Pass*, 866 F.2d 237, 241 (7th Cir. 1989) ("This court has repeatedly explained that 'improper comments during closing argument rarely rise to the level of

3

reversible error.'") (citation omitted). This hurdle becomes almost insurmountable when, as here, the statements were relatively brief, the court instructed the jurors that closing arguments were not evidence and the court gave a curative instruction promptly after the improper remarks. *See Probus v. K-Mart, Inc.*, 794 F.2d 1207, 1210 (7th Cir. 1986); *Lenard v. Argento*, 699 F.2d 874, 897 (7th Cir. 1983) (improper statements of counsel, made "in the context of all the evidence and the clear cautionary instructions of the trial court regarding the arguments of counsel, . . . do not rise to the level of reversible error"). In this regard, a jury is presumed to follow the Court's instructions "absent an overwhelming probability that the jury will be unable to disregard inadmissible evidence and a strong likelihood of a devastating effect from the evidence." *Turner v. Miller*, 301 F.3d 599, 604 (7th Cir. 2002), *citing Raybestos Prods. v. Younger*, 54 F.3d 1234, 1239 (7th Cir. 1995).

In *Joseph v. Brierton*, defendants successfully moved to exclude evidence that they, the warden and correctional officers at Stateville prison, were indemnified by the State for any judgments entered against them. *See Joseph v. Brierton*, 739 F.2d 1244, 1246 (7th Cir. 1984). During closing argument, defense counsel made repeated comments arguing that it would be unfair to make his clients pay a large judgment which they could not afford. *See id.* at 1246-47. In response to an objection from plaintiff's counsel, the judge instructed the jury that they should not concern themselves with the defendants' ability to pay in determining liability or damages. *See id.* at 1247. Given the highly prejudicial nature of the comments and the defendants' deception in moving to exclude evidence of indemnification, the Seventh Circuit found that "stronger medicine" was needed than the curative instruction. *See id.* Under such circumstances, the Court held, the trial judge was required to either grant a mistrial or let the jury know that the defendants were indemnified. *See id.* at 1248.

Hartwell's remarks were relatively short, two sentences in his "ten-chapter closing," and not as flagrant as the statements in *Joseph*. *See Valbert*, 866 F.2d at 241 (stating that brief, unrepeated comments as part of a lengthy argument do not require a mistrial). The remarks did not address as directly the issue of who would be responsible for a judgment and could have been intended and interpreted in other ways, such as Hartwell putting a human face on the Association. *See Adams Labs, Inc. v. Jacobs Engineering Co., Inc.*, 761 F.2d 1218, 1226-27 (7th Cir. 1985) ("[T]o constitute reversible error, references to insurance coverage must be due to some misconduct or improper remarks or questions of counsel, ofttimes repeated, and calculated to influence or prejudice the jury.") (quotations omitted). Also, Hartwell's statements inferring that a judgment would affect all Association members were accurate to the extent the Association's insurance did not cover punitive damages. Most important though, this Court's curative instruction was prompt and particularly strong. The Court not only instructed the jury that the source of funds was not a proper consideration in determining liability and that they should follow the Court's instructions on damages, but the Court also affirmatively instructed the jury that Hartwell's statements were inaccurate and incorrect. Based on this instruction and the nature of Hartwell's comments, there was not an overwhelming probability that the jury was unable to disregard the inadmissible evidence or a strong likelihood of a devastating effect from the evidence. *See Wilson v. Groaning*, 25 F.3d 581, 583 (7th Cir. 1994) (prejudice from irrelevant and inflammatory testimony that plaintiff inmate through fecal matter on one of the defendant guards negated by prompt curative instruction from the court). Thus, combined with this Court's general instruction that closing arguments are not evidence, it was not necessary to grant a mistrial or allow the jury to know of Defendants' insurance coverage in order to cure the possible prejudice from Hartwell's comments. *See Valbert*, 866 F.2d at 241 ("[A]n instruction to

the jury stating that the arguments of counsel are not evidence can mitigate the harm potentially caused by improper statements made by counsel during closing argument.").

II.     **Hartwell's "Testimony" Regarding Plaintiff's Decision to Bring Counsel to the Rules Violation Hearing**

Plaintiff argues that during Hartwell's cross-examination of her and during closing argument, Hartwell improperly "testified" as to his version of certain events surrounding her claims. Prior to the instant litigation, Hartwell represented the Association on other matters and was familiar with the conflict between Gassman and the Board over the Hallway Rule – the rule that prohibited Gassman from hanging her Mezuzah.[1] On October 20, 2005, Gassman took down some fliers that had been posted in the building's lobby.[2] The taking down of the fliers led to a verbal confrontation between Gassman and Frischholz, with Gassman eventually calling the police. A couple of weeks later, Gassman received a notice advising her that the Board would hold a hearing to determine whether she violated the Association's rules by taking down the fliers and causing a disturbance. When the Board held its hearing, Gassman brought an attorney and Hartwell attended on behalf of the Board. The Board found Gassman to be in violation of the Association's rules and levied a $400 fine against her. The Board also assessed Gassman $1,000 in legal fees related to Hartwell's attendance at the hearing. Gassman alleged that the assessment of the legal fees and the large fine were acts of retaliation for her complaints about the enforcement of the Hallway Rule.

At trial, Hartwell cross-examined Gassman about her understanding of whether the Association's Articles permitted the Board to assess her attorneys' fees:

---

[1] The rule stated that "[m]ats, boots, shoes, carts or objects of any sort are prohibited outside Unit entrance doors."

[2] The fliers made an Association announcement unrelated to the Hallway Rule.

Q. And I think you testified earlier that this is the notice you received alleging rule violations against you, requesting that you come before the board. And if you could read for me the last paragraph of that letter?

A. Pursuant to section 18.4(1) of the Act, Article XVIII of the declaration, and Article XV of the rules and regulations, you may be assessed for costs, fines, and all legal fees incurred in connection with this violation. A notice of hearing is enclosed.

\* \* \*

Q. Okay. So even though this letter that you got told you that at the end of this you might be assessed fines and you might be assessed costs and legal fees, you just -- I think it was your words -- you didn't think it was relevant?

A. Well, Mr. Hartwell, you know when I called you I thought this was a complete fabrication being used for completely illegitimate and illegal purposes.

Q. Okay. And at that point what did I instruct you, if you remember?

A. That the board was going forward, and that I may want to talk to my own attorney and be prepared to defend myself at the hearing.

Q. Right. And I probably told you to go talk to your attorney because you already had lawsuits and actions against the board of directors, you knew me to be their legal counsel, and being a lawyer I really couldn't talk to you about this, could I?

At this point, Blonder objected. Because Hartwell and Gassman agreed about the substance of their conversation, the Court overruled the objection, but advised Hartwell that he needed to avoid the subject of his conversations with Gassman. The cross-examination continued:

Q. Ms. Gassman, did you end up showing up to a hearing regarding your rule violations?

A. Wait. I didn't answer your last question.

Q. Okay.

A. Which was I was the one who told you that I had complaints filed against the building, and I wanted you to be aware that what you were doing was enabling the board to retaliate and intimidate me, because I had complaints filed. I was the one who told you that.

At this point, the Court stopped the examination and the parties went to sidebar. The Court told

7

Hartwell that his co-counsel would need to take over the questioning if he could not avoid the subject of his conversation with Gassman. Hartwell continued the cross-examination without further objection on this ground.

Plaintiff contends that the above cross-examination was, in effect, "unsworn testimony;" "unsworn testimony" from Hartwell that suggested it was Plaintiff's idea to be represented by counsel at the hearing. *See Thomas Steel Corp. v. Ameri-Forge Corp.*, 1991 WL 280086, at *2 (N.D. Ill. 1991) ("[T]he 'attorney as witness' problem arises not only when an attorney testifies, but also when an attorney puts his own credibility at issue by questioning the witness about alleged conversations between that witness and himself."). In her Motion, Plaintiff states that she recalls Hartwell advising her to bring an attorney to the rules violation hearing. Plaintiff argues that whose idea it was for her to bring counsel to the hearing was material to whether or not the Board retaliated against her by assessing her Hartwell's fees. Although Plaintiff makes much of the issue now, she did not testify at trial as to why she brought an attorney to the hearing. Beyond the relative insignificance of the exchange's substance, the Court also struggles to see Hartwell's purported suggestion that it was Gassman's idea to bring counsel. Hartwell, in his last question before Blonder's objection, agrees with Gassman that he advised her to talk to an attorney in preparation for the hearing.[3] *See Steadfast Ins. Co. v. Auto Marketing Network, Inc.*, 2004 WL 783356, *7 (N.D. Ill. 2004) ("The problem posed by an unsworn witness acting as an attorney would come to the forefront when the attorney and witness have differing views or recollections of certain events, thereby causing it to become necessary for the attorney to be called as a witness to clarify which

---

[3] It is fair to note at this point that it was Gassman that first mentioned the telephone conversation in an answer unresponsive to the question asked; a propensity that Gassman exhibited during direct as well as cross-examination.

version of the facts are true or for the attorney to inject his own credibility into the case to persuade the jury."). In fact, when asked at sidebar what factual dispute existed between Hartwell and Gassman regarding their conversation, Blonder identified none, stating only that one may arise. Given that the Court cut off Hartwell's questioning before any material contradiction arose, no prejudice occurred. In any event, the short exchange between Hartwell and Gassman during cross-examination did not result in an unfair trial.

In asking for a new trial based upon Hartman's cross examination, Plaintiff also cites the Local Rules for the Northern District of Illinois, which provide that "a lawyer shall not act as an advocate at trial . . . if the lawyer knows or reasonably should know that the lawyer may be called as a witness therein." N.D. Ill. L.R. 83.53.7(a). Plaintiff listed Hartwell as a potential witness based upon his history with the Association and Gassman. Defendants filed a motion in limine seeking to exclude Hartwell as a witness. Plaintiff responded that Hartwell had evidence material to her claims. This Court, finding that Hartwell had not been deposed and would not offer material testimony that could not be admitted through other evidence or witnesses, granted the motion in limine. Plaintiff was aware of Hartwell's role from the beginning of the litigation and never moved to disqualify him either at trial or earlier. *See Kafka v. Truck Ins. Exch.*, 19 F.3d 383, 386 (7th Cir. 1994) ("A motion to disqualify should be made with reasonable promptness after a party discovers the facts which lead to the motion.") (citation omitted). Thus, Plaintiff cannot now ask the Court to repeat the time and expense of a trial based upon an argument that she could have timely raised. *See, e.g., Schurz Communications, Inc. v. F.C.C.*, 982 F.2d 1057, 1060 (7th Cir. 1992) (regarding the disqualification of a judge "[l]itigants cannot take the heads-I-win-tails-you-lose position" and wait to see whether they win at trial before raising the issue); *Matter of Garofalo's Finer Foods, Inc.*,

186 B.R. 414, 440 (N.D. Ill. 1995) ("The purpose of the court imposed timeliness requirement is to foreclose a litigant from purposely waiting to learn whether the judge has ruled in its favor on the merits of the case before seeking disqualification as a means to defeat an unfavorable ruling.").

Beyond the cross-examination, Plaintiff cites two paragraphs of Hartwell's closing argument wherein he supposedly exacerbated the unsworn testimony problem by emphasizing his contradictory version of events. Plaintiff did not object to any of these statements at trial, waiving her right to challenge them now. *See Deppe v. Tripp*, 863 F.2d 1356, 1364 (7th Cir. 1988) (a party's failure to object to allegedly prejudicial comments during a closing statement constitutes a waiver of that party's right to raise those statements as a basis for reversal of a jury verdict). Moreover, in both paragraphs, Hartwell merely recounts the testimony of others – Gassman, Ms. Collins, and Ms. Schingoethe – he does not offer his own testimony. As such, Hartwell's statements during cross-examination and closing argument do not warrant a new trial.

## Conclusion and Order

None of Hartwell's statements, either individually or cumulatively, denied Plaintiff a fair trial. To the extent the statements were improper, this Court's instructions to the jury cured any possible prejudice and there was more than enough evidence to otherwise support the jury's verdict. Wherefore, Plaintiff's Motion for a New Trial is denied.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: April 30, 2007