Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Virginia M. Kendall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 5 C 5377 | **DATE** | 6/27/2011 |
| **CASE TITLE** | Gassman vs. Frischholtz et al | | |

**DOCKET ENTRY TEXT**

As described above, the Court clarifies the remaining trial matters and denies Defendants's Motion to File a Counterclaim [310].

■[ For further details see text below.]  Docketing to mail notices.

## STATEMENT

Plaintiffs Lynne Bloch, Helen Bloch, and Nathan Bloch (together "Bloch") and Debra Gassman ("Gassman") (together "Plaintiffs"), along with defendants Edward Frischholtz ("Frischholz") and the Shoreline Towers Condominium Association ("Shoreline") (together "Defendants"), provided the Court with Position Papers outlining their respective views on the remaining trial matters. Defendants also filed a Motion to File a Counterclaim for Contribution against Bloch. The Court held a status hearing on June 2, 2011 where the parties presented oral arguments on these matters. The Court now addresses each issue in turn.

### I. Bloch Trial Matters

The Seventh Circuit, in its *en banc* review, held that Bloch may proceed on an intentional discrimination theory under 42 U.S.C. §§ 3604(b), 3617 ("FHA") and the Civil Rights Act, 42 U.S.C. § 1982. *See Bloch v. Frischholz*, 587 F.3d 771, 787 (7th Cir. 2009) (*en banc*) ("*Bloch II*"). The court also held that Bloch's state law claims must be reinstated. *See id*. The parties first dispute whether Bloch may attempt to prove discrimination using only proof of discriminatory intent or if she may also rely on a modified disparate impact theory.

#### A. Modified Disparate Impact Theory

"Generally, plaintiffs can prove discrimination under § 3604 in two ways"—proof of discriminatory intent or through a modified disparate impact theory. *Id*. at 784. In allowing Bloch to proceed on an intentional discrimination theory, the Seventh Circuit found that Bloch had waived her disparate impact arguments because she failed to develop them at summary judgment. In fact, Bloch did not develop a modified disparate impact theory argument until her motion to reconsider the district court's grant of summary judgment, which the Seventh Circuit held was too late. *See id*. at 784 n. 9 ("developing an argument for the first time in a motion to reconsider is too late.").

Defendants now seek to apply the *Bloch II* holding to limit the theory under which Bloch may pursue her §§ 3604(b), 3617, and 1982 discrimination claims. In *Bloch II*, the Seventh Circuit held that Bloch had waived her modified disparate impact theory arguments because she had not developed them at summary judgment. As such, the facts supporting those arguments, and the arguments themselves, were not before the district court or the Seventh Circuit. Indeed, neither the district court at summary judgment nor the Seventh Circuit in its *en banc* ruling applied the four-factor *Arlington Heights* test to determine whether Bloch had alleged facts to support a modified disparate impact theory of discrimination. *See Metro. Hous. Dev. Corp. v. Vill. of Arlington Heights*, 558 F.2d 1283, 1290 (7th Cir. 1977).[1]

The Seventh Circuit, however, did not apply these factors. Instead, the Seventh Circuit found that Bloch had waived any modified disparate impact theory argument at summary judgment and, therefore, on appeal. The Seventh Circuit then went on to analyze Bloch's discrimination claim under the theory of intentional discrimination to determine if she could maintain her federal claims. The court found that "the record contains sufficient evidence, with reasonable inferences drawn in the Blochs' favor, that there are genuine issues for trial on intentional discrimination." *Bloch II*, 587 F.3d at 785. The court's remand instructions state that, based on this finding, Bloch may now proceed to trial on her §§ 3604(b), 3617, and 1982 claims.

The Seventh Circuit clarified that the modified disparate impact theory was not properly before it on appeal; it did not hold that Bloch waived her right to raise a modified disparate impact theory on remand. That the Seventh Circuit found that Bloch waived a theory of discrimination on appeal is not, as Defendants contend, equivalent to a finding that Bloch's modified disparate impact claims are not viable. Moreover, in remanding the case, the Seventh Circuit reversed the district court's grant of summary judgment on Bloch's §§ 3604(b), 3617, and 1982 claims. The court did not further limit the manner in which Bloch could pursue these claims going forward. Accordingly, Bloch may pursue her discrimination claims under a proof of discriminatory intent theory or a modified disparate impact theory.

### B. State Law Claims

The parties also dispute whether Bloch's state law claims should be reinstated. While Defendants contended in their Position Papers that Bloch's state law claims—which were brought pursuant to the Illinois Condominium Property Act, 765 ILCS 605/18.4 and common law—were barred, this Court has since disagreed and found those claims to be properly before it. *See* Doc. 244.

### C. § 3604(a)

The parties agree that Bloch may not maintain a claim pursuant to 42 U.S.C. § 3604(a) because Bloch was not able to demonstrate that her condominium was made "unavailable." *Bloch II*, 587 F.3d at 778.

As such, Bloch may proceed on her §§ 3604(b), 3617, and 1982 claims as well as on her state law claims. Bloch may attempt to demonstrate discrimination in two ways: through proof of discriminatory intent or through a modified disparate impact theory.

## II. Gassman Trial Matters

After *Bloch II*, the Seventh Circuit instructed this Court to reconsider the district court's earlier grant of partial summary judgment on Counts I, III, IV, VI, and VII and determine whether there should be a new trial

| STATEMENT |
|---|

on Counts II, V, and VII. *See* Doc. 246.

The parties now agree that Gassman's federal discrimination claims pursuant to §§ 3604(b) and 1982 are properly before the Court and that Gassman's equitable relief claims are moot, though Gassman maintains a valid claim for monetary damages. While Defendants initially contended that the findings from Judge Lindberg's August 7, 2006 Summary Judgment Order remained in effect, Defendants subsequently withdrew that position in their Response to Plaintiffs's Position Papers. *See* Doc. 305 at 2.

### A.    § 3604(a)

The Court now clarifies that Gassman may pursue a claim under § 3604(a). The Seventh Circuit held that Bloch could not maintain a § 3604(a) claim because she could not demonstrate that her condominium was made "unavailable." *Bloch II*, 587 F.3d at 778. Gassman, unlike Bloch, moved out of her condominium and, as such, has demonstrated sufficient facts to proceed on a § 3604(a) claim. *See id*. at 779 n. 7 (Gassman's "circumstances might dictate a different result under § 3604(a) than the Blochs' case.").

### B.    Modified Disparate Impact Theory

Defendants contest whether Gassman may proceed on a § 3604 claim based on a theory of disparate impact because the Seventh Circuit, in its *en banc* review, determined that Bloch waived her right to argue disparate impact by failing to develop the theory during summary judgment. *See id*. at 784. Similarly, Defendants argue, Gassman did not develop a theory of disparate impact during summary judgment and, as such, the theory is waived. Gassman responds that the Seventh Circuit explicitly allowed for a plaintiff to proceed on a disparate impact theory. In addition, Gassman argues that Defendants's sole legal argument at summary judgment was that § 3604 claims did not apply post-acquisition and that as a result, disparate impact was not before the court at that time and Gassman had no obligation to raise it in response.

Applying *Bloch II*, the Court finds that Gassman, like Bloch, failed to raise a modified disparate impact theory at summary judgment. Nonetheless, the Court also finds that, given Defendants's arguments at summary judgment—that the FHA did not apply post-acquisition—and *Bloch II's* subsequent rejection of that argument, Gassman did not need to raise a modified disparate impact theory of discrimination at summary judgment to preserve her ability to raise it now. Put another way, Gassman did not waive a disparate impact theory of discrimination because Defendants did not challenge the sufficiency of her claim at summary judgment.

Moreover, allowing Gassman to proceed on a modified disparate impact theory is consistent with *Bloch II* and its finding that a plaintiff may prove discrimination through proof of discriminatory intent or through a modified disparate impact theory. *See id*. at 784. As discussed above, the court held that Bloch had waived her modified disparate theory of discrimination on appeal. The court did not discuss the sufficiency of Gassman's theories of discrimination, but did instruct this Court to apply *Bloch II* to the district court's summary judgment ruling on Gassman's claims. In doing so, the Court finds that the arguments put forth by the district court in granting Defendants summary judgment on Gassman's federal claims were subsequently rejected by *Bloch II*. As such, the Court reinstates Bloch's federal claims and, based on its analysis of *Bloch II*, finds that Gassman may attempt to prove discrimination through proof of discriminatory intent or through a modified disparate impact theory.

### C. Evidence of Intentional Discrimination

To the extent that Defendants seek to limit the evidence that Gassman can rely on to prove discrimination, Defendants are mistaken. Gassman may prove intentional discrimination based on evidence of discrimination against other similarly-situated individuals. The evidence Gassman seeks to rely on—evidence put forth by Bloch—is closely related to Gassman's circumstances and theories of the case. *See Hasan v. Foley & Lardner LLP*, 552 F.3d 520, 529 (7th Cir. 2008). Moreover, the Seventh Circuit found that Defendants's alleged animus may have been based in part on religious bias, not purely personal bias against the Blochs. *See Bloch II* at 786 (noting that Frischholz's comments "smack of religious bias."). Specifically, the court noted Frischholz's scheduling of meetings on Fridays while fully aware of the conflict that created for Jewish residents wishing to attend. The court also found that the selective enforcement of the Hallway Rule against the mezuzah to be one of many fats and inferences that allowed a trier of fact to conclude that Defendants "intended to target" certain residents based on their religious obligations. *Id*. at 786-87.

Therefore, Gassman may use evidence relating to Bloch's intentional discrimination claim because they are similarly-situated individuals and they have overlapping theories of the case.

### D. Retaliation and Breach of Fiduciary Duty Claims from Previous Trial

Defendants claim that Gassman is not entitled to a new trial on these issues. Gassman responds that her first trial was "tainted" as a result of Judge Lindberg's prior ruling that was effectively overturned by *Bloch II*.

At Gassman's previous trial, the jury was instructed repeatedly that the issue of discrimination was not before them. Therefore, the jury considered whether Gassman was retaliated against pursuant to § 3617 for initiating discrimination claims, not whether she was discriminated against; and whether Shoreline breached its fiduciary duty, not whether it discriminated against Gassman.

Given the Seventh Circuit's holding in *Bloch II*, and the fact that Gassman may now pursue discrimination claims, the Court finds that Gassman is entitled to a new trial on her retaliation and breach of fiduciary duty claims.

As such, the remaining Gassman trial matters are 42 U.S.C. §§ 3604(a) and (b), 3617, and 1982 as well as her claims for retaliation and breach of fiduciary duty. Similar to Bloch, Gassman may attempt to prove discrimination under § 3604 using proof of discriminatory intent or a modified disparate impact theory.

## III. Defendants's Motion to File a Counterclaim

Defendants seek leave to file a Counterclaim for Contribution against Bloch. Defendants argue that Bloch participated in and voted for the Hallway Rule that is central to the case and that, as a result, they may assert contribution against her for attorneys's fees and other costs incurred. Plaintiffs respond that there has been unexplained delay in bringing this motion; that Defendants's proposed counterclaim is an impermissible SLAPP suit; and that Plaintiffs would suffer undue prejudice.

As an initial matter, while not dispositive, the Court notes that Defendants delayed for a substantial amount of time before filing their motion. As Defendants concede, though the case was pending appeal for several years, the parties had an initial status on January 10, 2010, following the *Bloch II* remand. Moreover,

| STATEMENT |
|---|

the underlying theory giving rise to the proposed counterclaim was available to Defendants since the initiation of the lawsuit, yet Defendants waited until March 2011 to file their motion.

More importantly, the Court finds that adding a counterclaim against Bloch at this stage of the litigation would be unduly prejudicial to Plaintiffs. Specifically, this case focuses on the 2004 and 2005 application of the 2001 Shoreline Hallway Rule, not the Rule's passage. *See Bloch II*, 587 F.3d at 783 ("Hallway Rule 1 might have been neutral when adopted . . . [b]ut the Blochs' principal argument is that the Rule isn't neutral anymore . . . In essence, the Blochs claim that, after the 2004 hallway repainting project, the Board, by its reinterpretation of Rule 1, effectively enacted a new rule to deprive Jews of an important religious practice."). Defendants's proposed counterclaim, however, involves the events in 2001 leading up to the Hallway Rule's passage. Plaintiffs state that, if forced to defend against this counterclaim, they would require additional depositions regarding the 2001 deliberations and passage of the Rule. The Court finds that such an imposition, especially given the approaching trial date, is unduly prejudicial.

## IV. Conclusion

As described above, the Court clarifies the remaining trial matters and denies Defendants's Motion to File a Counterclaim.

1. The four factors are: (1) how strong is the plaintiff's showing of discriminatory effect; (2) is there some evidence of discriminatory intent, though not enough to satisfy the constitutional standard of *Washington v. Davis*; (3) what is the defendant's interest in taking the action complained of; and (4) does the plaintiff seek to compel the defendant to affirmatively provide housing for members of minority groups or merely to restrain the defendant from interfering with individual property owners who wish to provide such housing. *See Arlington Heights*, 556 F.2d at 1290.